# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1674

_____

Ann Robinette; Eric Robinette,     *
                                   *
        Appellants,                *
                                   *
    v.                             *     Appeal from the United States
                                   *     District Court for the
William Jones; Richard Fentiman;   *     Western District of Missouri.
Tim Gassen; Joshua Landis;         *
Merritt M. Beck, III; City of      *
Centralia, Missouri,               *
                                   *
        Appellees.                 *

_____

Submitted: September 29, 2006
Filed: February 8, 2007

_____

Before LOKEN, Chief Judge, SMITH and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

    In this civil rights action, plaintiffs Ann and Eric Robinette appeal two orders in which the district court[1] dismissed several claims against the City of Centralia, its prosecutor and several of its police officers on the basis of collateral estoppel and

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

granted summary judgment to the defendants on the remaining claims. We affirm the district court's rulings.

## I. BACKGROUND

On April 13, 2003, Ms. Robinette parked her car in the second of a series of five parallel parking spaces on Sneed Street near a community center in Centralia, Missouri. Signs reserving parking for police vehicles were posted next to the first, third, and fifth spaces, but not the second and fourth spaces. Centralia Police Officer William Jones ticketed Ms. Robinette for parking in a space reserved for police vehicles. The ticket set a court date of May 12, 2003, and contained a warning in all capital letters, stating, "YOUR FAILURE TO APPEAR IN COURT AT THE TIME SPECIFIED ON THIS CITATION OR OTHERWISE RESPOND TO THE CITATION AS DIRECTED MAY RESULT IN THE SUSPENSION OF YOUR DRIVER'S LICENSE AND DRIVING PRIVILEGE AND MAY RESULT IN A WARRANT BEING ISSUED FOR YOUR ARREST."

Ms. Robinette missed the court date, and the court issued a warrant for her arrest. Officer Jones and Officer Richard Fentiman enforced the warrant at approximately 1:00 a.m. on June 7, 2003, arresting Ms. Robinette at her home. They took her to the police station, and her husband, Eric, followed. When Mr. Robinette arrived at the police station, he parked on Sneed Street in the first of the five spots reserved for police vehicles. Officer Jones instructed Mr. Robinette to move his vehicle, telling him that he would issue a parking ticket if he did not comply. Mr. Robinette admits that he "smart-mouthed" Officer Jones, who then issued him a parking ticket and again told him to move his car. Mr. Robinette momentarily forgot that he left the keys in the ignition, and, in that moment, Officer Jones contacted Officer Tim Gassen to request a tow truck. By the time the tow truck arrived, Ms. Robinette had been released. Officers Jones and Fentiman would not allow the

Robinettes to interfere with the tow truck operator, to the point of physically restraining Ms. Robinette from approaching the tow truck driver.

On September 8, 2003, Centralia's attorney, Merritt Beck, dismissed the two parking tickets issued to the Robinettes. Later in 2003, the Robinettes filed a lawsuit in federal district court against Centralia, Beck, his law firm, and the police officers involved in the incidents, making claims under both 42 U.S.C. § 1983 and state tort law ("*Robinette I*"). In that case, the district court issued orders that dismissed the § 1983 claims against Beck on the basis of absolute prosecutorial immunity and all state law claims against him on the basis of state official immunity; dismissed all state law claims against Centralia on the basis of sovereign immunity; and dismissed all state and federal claims against Centralia Police Officers Jones, Fentiman, Gassen, and Joshua Landis, insofar as each was named in an official capacity, on the basis of sovereign immunity. The defendants then filed a motion for summary judgment in *Robinette I*, seeking to dispose of the remaining claims. While that motion was pending, the Robinettes voluntarily moved to dismiss the lawsuit without prejudice. The defendants did not object, and the court granted the Robinettes' motion.

Within a few months, the Robinettes filed the instant lawsuit in Missouri state court against the same defendants, again asserting § 1983 claims and the same state law tort claims. The defendants removed the case to federal court. In a single order, the district court granted two motions to dismiss several of the claims against a number of the defendants on the basis of collateral estoppel, relying on the orders issued in *Robinette I* establishing the various immunity defenses. The defendants again moved for summary judgment on the remaining claims. After allowing the Robinettes to file their response out of time, the district court found that the Robinettes failed to controvert any facts or legal arguments by the defendants and granted the defendants' motion for summary judgment, disposing of the remaining

claims.[2] The Robinettes also filed a motion to reconsider, which the district court denied.

The Robinettes appeal the district court's dismissal order applying collateral estoppel and its summary judgment order. For the reasons discussed below, we affirm.

## II.    DISCUSSION

### A.    Collateral Estoppel

We review a district court's dismissal order de novo. *Prescott v. Little Six, Inc.*, 387 F.3d 753, 756 (8th Cir. 2004). The application of collateral estoppel is a question of law that we also review de novo. *Morse v. Comm'r*, 419 F.3d 829, 833 (8th Cir. 2005). The term "collateral estoppel" comprehends a variety of more specific doctrines including issue preclusion, the estoppel applicable here. In the Eighth Circuit, issue preclusion has five elements:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

*Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1273 (8th Cir. 1997). The Robinettes dispute the fourth element, arguing that their voluntary dismissal of

---

[2]The district court dismissed Officer Joshua Landis from the case at the Robinettes' request.

*Robinette I* prevented a "valid and final judgment" on the immunity issues that the district court ruled were precluded. The Robinettes rely on *In re Piper Aircraft Distribution System Antitrust Litigation*, in which we held, "[t]he effect of a voluntary dismissal without prejudice is to render the proceedings a nullity and leave the parties as if the action had never been brought." 551 F.2d 213, 219 (8th Cir. 1977).[3] In response, the defendants cite *Miller v. Norris*, in which we held, "[a]lthough the dismissal was without prejudice, 'an *issue* actually decided in a non-merits dismissal is given preclusive effect in a subsequent action between the same parties.'" 247 F.3d 736, 740 (8th Cir. 2001) (quoting *Pohlmann v. Bil-Jax, Inc.*, 176 F.3d 1110, 1112 (8th Cir. 1999)) (emphasis in *Pohlmann*).

As *Miller* implies, the finality requirement for issue preclusion has become less rigorous. "[R]ecent decisions have relaxed traditional views of the finality requirement in the collateral estoppel context by applying the doctrine to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief, let alone enforced." *In re Nangle*, 274 F.3d 481, 484-85 (8th Cir. 2001) (quoting *John Morrell & Co. v. Local Union 304A of the United Food and Commercial Workers*, 913 F.2d 544, 564 (8th Cir. 1990)) (internal quotation omitted). "'[F]inality' in the context of issue preclusion may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *John Morrell*, 913 F.2d at 563 (quoting *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961)) (internal alteration omitted).[4]

---

[3]In *Piper Aircraft*, we found it particularly relevant in our estoppel analysis that the plaintiff voluntarily dismissed a prior action under Fed. R. Civ. P. 41(a)(1)(i) before the defendants had filed an answer. 551 F.2d at 220. Here, the Robinettes dismissed *Robinette I* months after the defendants had answered the complaint and while the defendants' motion for summary judgment was pending.

[4]*John Morrell* articulates the fourth element of the issue preclusion analysis as satisfied when "the disposition [of the prior issue] was *sufficiently* final." 913 F.2d

In *Robinette I*, the district court had thoroughly analyzed and decided Beck's immunities on all claims, the immunities of the police officers in their official capacities on all claims, and Centralia's sovereign immunity from the state tort claims. Despite the subsequent voluntary dismissal of *Robinette I*, those immunity defenses were "resolved by preliminary rulings" and there is "no really good reason" to litigate them again. We therefore hold that the district court's orders in *Robinette I* were valid and final for the purposes of precluding further litigation between the parties on the issues that those orders decided.[5]

## B.    Summary Judgment

After the dismissal order, only the 42 U.S.C. § 1983 claims against Centralia and the § 1983 and state tort claims against the police officers in their individual capacities remained. The district court granted summary judgment to Centralia and the police officers on these claims. We review a grant of summary judgment de novo. *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005), *cert. denied*, --- U.S. ---, 126 S. Ct. 807 (2005). We view the evidence in a light most favorable to the nonmoving party. *Id.* However, "the party opposing summary judgment may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'" *United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

---

at 562 n.16 (emphasis added).

[5]We reject the Robinettes' claim that Centralia waived its sovereign immunity defense in an amended answer filed more than two months after the district court's dismissal order established Centralia's sovereign immunity defense by collateral estoppel.

### 1. § 1983 Claims

#### a. Centralia

The district court granted summary judgment to Centralia on the Robinettes' claims of municipal liability under § 1983. The Robinettes assert first that Centralia had a custom or policy to display street signs without an enabling ordinance as arguably required by Centralia's city code. *See* Mo. Rev. Stat. § 300.130 (2003) (generally, the "Model Traffic Ordinance").[6] The Robinettes do not identify any constitutional deprivation associated with this alleged infraction. Without a direct causal link between Centralia's purported policy or custom of improperly posting "no parking" signs and some identified constitutional deprivation, Centralia cannot be liable to the Robinettes under § 1983 for posting the signs at issue. *See Booker v. City of St. Louis*, 309 F.3d 464, 467 (8th Cir. 2002) ("[A] violation of a municipal regulation does not establish a constitutional violation for purposes of § 1983.").

Next, the Robinettes assert that Centralia's policy or custom of failing to send a separate written notice as required by § 300.590 of the Model Traffic Ordinance, warning a violator that he or she could be arrested for failing to appear in court for a parking violation, constitutes a due process violation. In an effort to demonstrate that Centralia had a policy or custom of failing to give such notices, the Robinettes point to an interrogatory response in which Centralia stated:

> Since sometime in 2003, the traffic violations bureau clerk began sending letters to persons issued parking tickets when the parking ticket

---

[6]Chapter 300 of the Missouri Code is titled "Model Traffic Ordinance." It is only effective in cities that have adopted it. Mo. Rev. Stat. § 300.600. While Centralia has adopted the model ordinance, it is not clear that § 300.130 applies to parking signs, as that section addresses "*traffic* control signs, signals, and devices." *Id*. (emphasis added).

is placed under the windshield wiper of the vehicle. The letters inform the person of the parking ticket and include a statement that if the person does not pay the ticket before court and does not appear in court on the arraignment date, an arrest warrant can be issued by the judge.

Viewed in the light most favorable to the Robinettes, we will assume that this interrogatory response establishes that prior to "sometime in 2003," Centralia had a custom or policy of not providing separate written notices to parking ticket recipients who did not pay or appear in court, as required by § 300.590. Even so, in light of the prominent notice in all capital letters printed on the parking ticket that Ms. Robinette indisputably received, we hold that Ms. Robinette was not deprived of her constitutional right to procedural due process. *See Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998) ("A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures."); *Bliek v. Palmer*, 102 F.3d 1472, 1475 (8th Cir. 1997) ("Due process is a flexible concept and a determination of what process is due, or what notice is adequate, depends upon the particular circumstances involved.").

Third, the Robinettes argue that Centralia failed to properly train or supervise its police officers. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

> [T]he focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.

*Id.* at 390-91. *See also Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998) (noting that a claim for failure to supervise requires the same analysis as a claim for failure to train under § 1983). The Robinettes assert that Officer Jones's issuance of a parking ticket to Ms. Robinette for parking in a space without an appropriate "no parking" sign is evidence of Centralia's failure to train or supervise its police officers. They also argue that the conduct of Officers Jones, Fentiman and Gassen in the course of Ms. Robinette's arrest and in the subsequent events surrounding the towing of Mr. Robinette's car was the result of Centralia's failure to train and supervise them. However, they present no evidence about Centralia's police training and supervision or its relation to the tasks that the officers performed. Without such facts to demonstrate that there is a genuine issue for trial, the Robinettes' mere allegations that Centralia failed to train or supervise its police officers cannot defeat summary judgment. Fed. R. Civ. P. 56(e); *United of Omaha*, 458 F.3d at 791.

### b.    Individual Officers

The district court also determined that Officers Jones, Fentiman and Gassen were entitled to qualified immunity in their individual capacities on the Robinettes' § 1983 claims. Qualified immunity is a question of law that we review de novo. *Liebe*, 157 F.3d at 576. Whether an official is entitled to qualified immunity depends upon the "objective legal reasonableness" of the official's actions "assessed in light of the legal rules that were 'clearly established'" at the time of the actions in question. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citations omitted). The first inquiry is whether the officer's conduct violated a constitutional right when the facts are viewed in a light most favorable to the party asserting the injury. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If "a violation could be made out on a favorable view of the parties' submissions," *id.*, the next inquiry is whether the constitutional right was clearly established; that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *id.* at 201-02. "If the law did

not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id*. at 202.

The Robinettes first assert that Officer Jones is not entitled to qualified immunity for his conduct in issuing the first parking ticket to Ms. Robinette. The Robinettes do not identify any constitutional right that was infringed when Officer Jones issued the parking ticket to Ms. Robinette. *See Goff v. Bise*, 173 F.3d 1068, 1072 (8th Cir. 1999) (identifying as the plaintiff's burden to "assert a violation of a constitutional right" on a § 1983 claim). Even viewing the Robinettes' submissions in the most favorable light, the Robinettes have not shown how Officer Jones's issuance of a parking ticket violated Ms. Robinette's constitutional rights. Therefore, Officer Jones is entitled to qualified immunity on this claim.[7] *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

The Robinettes next argue that Officers Jones and Fentiman are not entitled to qualified immunity for the 1:00 a.m. arrest of Ms. Robinette. The Robinettes argue that it was unreasonable for Officers Jones and Fentiman to execute the arrest warrant at 1:00 a.m. They cite several cases applying Fourth Amendment reasonableness principles to the execution of search warrants and make the unsupported argument that "[s]earch warrants are analogous to arrest warrants in the law." Even if a constitutional violation could be made out under the circumstances surrounding the

---

[7] The Robinettes have made unsubstantiated arguments that Officer Jones's conduct was motivated by malice or bad faith stemming from his participation in a failed real estate transaction with Ms. Robinette's mother. Apart from the Robinettes' failure to produce any evidence supporting this claim, the Supreme Court abrogated the subjective component of qualified immunity in *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982).

1:00 a.m. arrest of Ms. Robinette, the constitutional right was not clearly established.[8] The warrant to arrest Ms. Robinette was valid on its face, and the record demonstrates that there was a standing order for all officers to serve all active arrest warrants. Further, there was no policy regarding the time of day that arrest warrants were to be served, and Missouri law provides that "[a]n arrest may be made on any day or at any time of the day or night," Mo. Rev. Stat. § 544.210. Under these circumstances, it would not be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted," *Saucier*, 533 U.S. at 202, and the constitutional right is not clearly established. Officers Jones and Fentiman are therefore entitled to qualified immunity from lawsuits arising out of this arrest. *Id.*

The Robinettes also assert that Officers Jones, Fentiman and Gassen cannot claim qualified immunity for towing Mr. Robinette's car from a parking space reserved for police vehicles. "A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *Andrews v. City of West Branch*, 454 F.3d 914, 918 (8th Cir. 2006) (quotation omitted). A Fourth Amendment violation occurs where a seizure is unreasonable under the circumstances. *See id.* As with the arrest of Ms. Robinette, even if a Fourth Amendment violation could be made out under the facts alleged here, the constitutional right is not clearly established. The Robinettes assert that Mo. Rev. Stat. § 304.155 governs the conditions under which the police may lawfully tow a

---

[8]*Saucier* requires a full analysis of the first prong of a qualified immunity analysis because it "permits courts in appropriate cases to elaborate the constitutional right with greater degrees of specificity." *Id.* at 207. However, the "law's elaboration from case to case," *id.* at 201, would be ill served by a ruling here, where the parties have provided very few facts to define and limit any holding on the reasonableness of the execution of the arrest warrant. *See Buchanan v. Maine*, 469 F.3d 158, 168 (1st Cir. 2006) ("We do not think the law elaboration purpose will be well served here, where the Fourth Amendment question is a reasonableness question which is highly idiosyncratic and heavily dependent on the facts."); *see also Ehrlich v. Town of Glastonbury*, 348 F.3d 48 (2d Cir. 2003).

vehicle. While § 304.155 authorizes law enforcement officers to tow vehicles in a variety of circumstances, it does not prohibit law enforcement officers from towing a vehicle in circumstances not covered by that statute. Section 304.155 is silent about the particular conditions at issue here. It is undisputed that Mr. Robinette's car was parked in the first parking space on Sneed Street–one of the spaces that had a sign adjacent to it reserving parking for the police. Mr. Robinette testified that Officer Jones instructed him to move his vehicle twice. The first time, Mr. Robinette admits that he "smart-mouthed" Officer Jones, and Officer Jones issued a parking ticket to him. On the second occasion, Mr. Robinette momentarily forgot the whereabouts of his keys, at which point Officer Jones seized Mr. Robinette's vehicle and called for a tow. Assuming, in a light most favorable to Mr. Robinette, that he actually intended to move his vehicle, it still would not be unreasonable for an officer in these circumstances to believe that Mr. Robinette's actions up to that point manifested a refusal to move his car. The law did not put Officer Jones on notice that it would be clearly unlawful to tow the car in these circumstances, and Officers Jones, Fentiman and Gassen are therefore entitled to qualified immunity. *See Saucier*, 533 U.S. at 202.

### 2. State Tort Claims

The district court also concluded that Officers Jones, Fentiman and Gassen were officially immune from the Robinettes' state tort claims under Missouri law. In reviewing both the Robinettes' response to the summary judgment motion and their motion for reconsideration of the summary judgment order and related materials, we find that the Robinettes completely failed to dispute in the district court the defendants' assertion of official immunity from the state tort claims. Generally, we do not consider arguments that were not raised in the district court, *Hudson v. Norris*, 227 F.3d 1047, 1051 (8th Cir. 2000), and we see no compelling reason to do so here.

## III.  CONCLUSION

We affirm the district court's orders dismissing several of the Robinettes' claims on collateral estoppel grounds and holding that Centralia and its police officers were entitled to summary judgment on the remaining claims.

_____