# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3387

_____

| | | |
|---|---|---|
| In re: Michael Allen Porter; Patricia Diane Porter, | * | |
| | * | |
| | * | |
| Debtors. | * | |
| | * | |
| | * | |
| ----------------------------------------- | * | |
| | * | |
| Holly Sells, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | Bankruptcy Appellate Panel |
| | * | for the Eighth Circuit. |
| | * | |
| Michael Allen Porter, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 14, 2008
Filed: August 26, 2008

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Michael Allen Porter filed for bankruptcy under Chapter 7 of the Bankruptcy Code. Holly Sells filed an adversary complaint against Porter, seeking to bar the discharge of a judgment debt that she had obtained against him in an employment retaliation case. The bankruptcy court gave collateral estoppel effect to the judgment, finding that the jury in the retaliation case necessarily found that Porter willfully and maliciously injured Sells. Accordingly, the bankruptcy court excepted the judgment debt from discharge under 11 U.S.C. § 523(a)(6). The Bankruptcy Appellate Panel affirmed, and Porter appealed. We affirm.

I.

Holly Sells sued Mr. Speedy Car Care Center, John Huffer, Porter, and PorJohn Enterprises, LLC for sexual harassment, retaliation, and constructive discharge under Title VII and the Arkansas Civil Rights Act. Huffer and Porter were the owners of Mr. Speedy Car Care Center, a partnership. Sells alleged that Huffer sexually harassed her and that Huffer and Porter retaliated against her after she reported the sexual harassment to her supervisor and to Porter.

At the trial, Sells testified that Huffer constantly asked her out. He frequently called her cell phone and left messages, saying he missed her and wanted her to come over and cuddle with him. He asked her for sex numerous times and offered things such as a car and a house in return, but she declined. Sells also testified that Huffer on multiple occasions grabbed her breasts, her buttocks, and her crotch and that she pushed him away each time. On one particular occasion, Sells was retrieving supplies from a closet, and Huffer followed her, closed the door, pulled her from behind to his groin area, and kissed her neck. Sells pushed him away and ran crying to the bathroom.

Sells testified that many of Huffer's advances occurred after business hours on Wednesdays when she cleaned the carwash for extra money. Prior to Huffer's and

Porter's purchase of the business, Sells worked at the carwash and cleaned it every Wednesday night. She testified that no one had ever stayed with her while she cleaned, but that immediately after the ownership change, Huffer started staying late on Wednesdays. Sells asked another employee to help her clean because she "could not stay with [Huffer] by [her]self at night." Despite the other employee's presence, Huffer continued talking to Sells and grabbing and touching her. Sells kept rejecting his advances until she finally quit cleaning on Wednesdays.

After the harassment began, Sells complained to her direct supervisor, Robert Jones, the general manager. Jones responded that it was Sells's fault and that she should not flirt with Huffer. Sells continued to complain to Jones and played the messages from Huffer on her cell phone for Jones, but Jones did nothing. Sells also complained to Porter, who also responded that she should not flirt with Huffer. Eventually, Jones told her she needed to pay more attention to her work because it was slipping. The defendants later took away two job responsibilities from Sells and gave them to two employees whom Sells supervised.

One day, Huffer asked Sells to help him return a car to a customer. She tried to avoid the task because it would require riding back to the car wash with Huffer, but he insisted. On the way back to the car wash, Huffer drove very fast and pulled into a parking lot. Huffer kept Sells in the car with the door locked for forty-five minutes. He alternated between being nice and yelling at her for telling people what he had done. He also grabbed her arm and leg. Meanwhile, Sells had called another employee who could hear Huffer's and Sells's voices for about fifteen minutes and could tell from Sells's voice that she needed help. Finally, Porter called Huffer, and Huffer returned Sells to the car wash.

The next day, Porter gave Sells a memo addressed to Huffer and Sells. It read:

In light of recent rumors alleging some type of inappropriate contact between the two of you during business hours, I am looking for your assistance in putting this matter to rest. Based on information provided by both of you in discussions with me, it appears that if anything did happen, any fault would have to be attributed to you both. It appears that there was a mutual understanding and agreement between the two of you that this was on a consensual basis.

I strongly suggest that in the future, both of you should be more cognizant of proper business etiquette, and refrain from any of these activities while at work. Your failure to adhere to this suggestion will prompt strong disciplinary action.

Your signatures on the bottom of this memo will serve as your acknowledgment and submission that anything that happened was of a consensual nature, and that nothing of this type will ever take place during normal work hours in the future. With you [sic] signatures, I will consider this matter closed, once and for all.

Huffer had already signed the memo. At trial, Porter admitted that when he wrote the memo, he knew Huffer had put his arm around Sells and pinched her buttocks without her consent, but Porter did not know the truth regarding Sells's other allegations against Huffer.

That day, Sells made copies of the memo and looked at her personnel file[1]. At the end of the day, Porter asked Sells if she had signed the memo, and she told him

---

[1]At trial, Sells again reviewed her personnel file and testified it contained memos regarding her work performance that were not in her file on her last day of work. She testified that it was normal office procedure to obtain the disciplined employee's signature on such a memo, but that none of these memos bore her signature.

she had not. Sells testified that Porter then threatened her that unless she signed the memo, she would be fired. Porter denied making the threat.

The next week, Sells called in sick and discussed the situation with Jones. She felt sick and could not return to work. She did not know what to do about the memo because she wanted to keep her job but could not sign the untrue memo. She testified that Jones begged her to return to work because he could not run the car wash without her. Jones relayed a message from Porter that Sells needed a doctor's note whenever she came back to work. Sells told Jones that she had not been to the doctor and that she was sick over the memo. She never returned to work at the car wash.

The jury found against Mr. Speedy Car Center, Huffer, and Porter, and awarded $360,000 in damages to Sells. Based on the jury instructions and findings, we know the following. The jury found that Huffer sexually harassed Sells, which required the jury to find: (1) she was subjected to sexual advances, sexually graphic and lewd comments, and inappropriate physical touching by Huffer; (2) such conduct was unwelcome; (3) such conduct was based on Sells's sex and made her working conditions intolerable; (4) either the defendants took adverse action against Sells with the intent of forcing her to quit, or her resignation was a reasonably forseeable result of their actions; and (5) Sells's rejection of or failure to submit to such conduct was a motivating factor in the defendants taking adverse action against Sells. The jury also found that the defendants retaliated against Sells, which required the jury to find: (1) Sells complained to defendants that Huffer harassed her on the basis of her sex; (2) the defendants took adverse action against Sells; and (3) Sells's complaint of sexual harassment was a motivating factor in the defendants' actions.

The jury awarded Sells punitive damages in addition to actual damages. The jury necessarily found that the defendants acted "with malice or reckless indifference" to Sells's right not to be sexually harassed or subject to retaliation. The instructions provided that the defendants acted with malice or reckless indifference if they "knew

that the sexual harassment of [Sells] and/or constructive discharge of [Sells] was in violation of the law prohibiting sexual harassment and retaliation, or acted with reckless disregard of that law."

Porter then filed for bankruptcy under Chapter 7, and Sells filed an adversary complaint against him claiming that the damages award was excepted from discharge under § 523(a)(6). The bankruptcy court gave collateral estoppel effect to the judgment, finding that the jury in the underlying case necessarily found that Porter willfully and maliciously injured Sells, and accordingly, that the judgment was non-dischargeable under § 523(a)(6). The Bankruptcy Appellate Panel affirmed. Porter appeals, arguing that the record from the district court does not support a finding that the judgment is excepted from discharge under § 523(a)(6).

II.

We review the bankruptcy court's factual findings for clear error and its legal conclusions de novo. Capital One Auto Fin. v. Osborn, 515 F.3d 817, 821 (8th Cir. 2008). Our review of the bankruptcy court's entry of summary judgment is de novo. Blocker v. Patch (In re Patch), 526 F.3d 1176, 1179 (8th Cir. 2008). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); In re Patch, 526 F.3d at 1180.

Section 523(a) exempts certain debts from discharge in bankruptcy. It states: "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." § 523(a)(6). Willful and malicious are two distinct requirements that Sells must prove by a preponderance of the evidence. Fischer v. Scarborough (In re Scarborough), 171 F.3d 638, 641 (8th Cir. 1999). The Supreme Court has made clear "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." Kawaauhau v. Geiger, 523

U.S. 57, 64 (1998); In re Patch, 526 F.3d at 1180. "[N]ondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Geiger, 523 U.S. at 61; In re Patch, 526 F.3d at 1180. A willful injury is "a deliberate or intentional invasion of the legal rights of another, because the word 'injury' usually connotes legal injury . . . in the technical sense." Geiger v. Kawaauhau (In re Geiger), 113 F.3d 848, 852 (8th Cir. 1997), aff'd, 523 U.S. at 57. Further, the debtor need not intend the consequences of his conduct to cause a willful injury. In re Patch, 526 F.3d at 1180. It is enough "[i]f the debtor knows that the consequences are certain, or substantially certain, to result from his conduct." Id. Maliciousness is conduct "targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause . . . harm." Siemer v. Nangle (In re Nangle), 274 F.3d 481, 484 (8th Cir. 2001) (quoting Barclays Am./Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 881 (8th Cir. 1985)).

The collateral estoppel doctrine applies in bankruptcy proceedings brought under § 523(a)(6). Hobson Mould Works, Inc. v. Madsen (In re Madsen), 195 F.3d 988, 989 (8th Cir. 1999). In the Eighth Circuit, the party asserting collateral estoppel must prove:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

Robinette v. Jones, 476 F.3d 585, 589 (8th Cir. 2007) (quotation omitted).

Porter argues the bankruptcy court improperly applied collateral estoppel to Sells's judgment in determining whether the debt was non-dischargeable under § 523(a)(6). Porter argues that the judgment does not prove that Sells suffered an injury, that Porter caused such injury, or that such injury was willful or malicious. Porter's primary focus is on the argument that the jury in the underlying retaliation case did not make a finding that any injury was the result of willful and malicious conduct by Porter. He argues that issue was not actually litigated and therefore collateral estoppel cannot support a finding of non-dischargeability. We disagree.

We focus only on Porter's actions because § 523(a)(6) reads "willful and malicious injury *by the debtor*." (Emphasis added). The jury found that Porter, as one of the defendants, took adverse action and retaliated against Sells. In so finding, the jury had to have believed Sells's testimony that Porter threatened her with termination if she did not sign the memo. She faced the choice of stating that Huffer did not sexually harass her, admitting complicity in the activity, and working in an environment where sexual harassment was permitted, or losing her job. She faced an injury either way—loss of the legal right to be free from sexual harassment or an adverse employment action. Accordingly, the jury necessarily found that Porter injured Sells.

The jury also necessarily found that Porter willfully injured Sells. The jury found that Sells's allegations of harassment motivated Porter to take adverse action against her. Forcing Sells to choose between giving up a potential harassment claim and working in a harassment-filled environment or losing her job was a deliberate and intentional injury. Porter left Sells no other alternative.

The jury necessarily found that Porter maliciously injured Sells. Porter's memo and threat were targeted specifically to Sells and were certain to cause her harm. Porter wrote untruthful statements in the memo to retaliate for her complaints and tried to force her recantation of those complaints by a threat. The memo stated: "Based on information provided by both of you in discussions with me, it appears that

if anything did happen, any fault would have to be attributed to you both. It appears there was a mutual understanding and agreement between the two of you that this was on a consensual basis." Those statements directly contradict Sells's complaints to Porter about Huffer's harassment. Further, Porter testified that he did not know the truth regarding Sells's allegations against Huffer when he wrote the memo and that he knew Huffer had put his arm around Sells and pinched her buttocks without her consent.

The facts accepted by the jury belie Porter's argument that he was trying to resolve the problem in good faith. He knew she would be harmed, and she was the only target of his unjustifiable and inexcusable actions. Cf. Johnson v. Miera (In re Miera), 926 F.2d 741, 744 (8th Cir. 1991) (affirming summary judgment under the collateral estoppel doctrine and concluding that the state court judgment of battery against the debtor "implicitly contained a finding of malice" because the debtor kissed the creditor, despite knowing that the kiss was unwelcome and would harm the creditor); Jones v. Svreck (In re Jones), 300 B.R. 133, 140 (B.A.P. 1st Cir. 2003) (affirming summary judgment under the collateral estoppel doctrine as "malice is inherent" in the sexual harassment finding); Dorer v. Moberg (In re Moberg), 156 B.R. 810, 814 (Bankr. D. Minn. 1993) (holding that the debtor willfully and maliciously injured the creditor by having sex with the creditor while knowing that the creditor did not want to have sex). The dearth of case law regarding judgment debts from retaliation cases in the context of § 523(a)(6) does not concern us. Sufficient case law exists that excepts from discharge judgment debts from sexual harassment cases, and here, Porter retaliated after Sells alleged sexual harassment. Although Porter did not harass Sells, he compounded her problems by first condoning Huffer's actions and then retaliating against her. Porter's actions were willful and malicious under § 523(a)(6).

## III.

We affirm the judgment of the Bankruptcy Appellate Panel.

LOKEN, Chief Judge, dissents.

_____