In re Stephen Paul ROGOWSKI and
Jennifer Ann Rogowski,
Debtors.

Nicole Tompkins, Plaintiff,

v.

Stephen Paul Rogowski and Jennifer
Ann Rogowski, Defendants.

Bankruptcy No. 10–31980.
Adversary No. 10–3122.

United States Bankruptcy Court,
D. Minnesota.

Aug. 19, 2011.

Bridget A. Sullivan, Christopher K. Loftus, Gurstel, Staloch & Chargo, P.A., Golden Valley, MN, for Plaintiff.

## ORDER FOR JUDGMENT OF DISCHARGEABILITY

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court for trial on plaintiff's complaint pursuant to 11 U.S.C. § 523(a)(6). Christopher K. Loftus appeared on behalf of Nicole Tompkins. Stephen and Jennifer Rogowski appeared, pro se. At the conclusion of the trial, the Court took the matter under advisement. Being now fully advised, the Court makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

### I. FACTUAL FINDINGS

In June 2008, the plaintiff (Tompkins) rented residential real property to the debtor-defendants (Stephen and Jennifer Rogowski). The term of the lease was two years, and the Rogowskis paid two deposits, one in the amount of $1,400 for general damages, and one in the amount of $250

for keeping a dog on the premises. Tompkins inspected the property once during the period in which the Rogowskis occupied the home, in October 2008, and found the home to be in normal condition.

On July 11, 2009, the Rogowskis vacated the property. They gave no advance notice to Tompkins, and intended to return shortly thereafter to thoroughly clean the property prior to formally relinquishing possession of the premises. However, Tompkins was immediately informed by a neighbor to the property that it had been purportedly abandoned, and therefore Tompkins re-entered the home right away.

There was substantial ordinary, and arguably extensive extraordinary, wear and tear of the property during the Rogowski tenancy including various stains and traffic degradation on the flooring, marks and scuffs on walls and trim, small holes in the walls, as well as possibly disconnected fixtures and various appliance and mechanical issues. The evidence at trial also established that of the areas of heavily affected carpet, a poorly house-trained or otherwise somewhat neglected dog was involved. Upon reclaiming possession of the property, Tompkins immediately undertook to assess and restore the condition of the property, and communication between the parties devolved rapidly into something hostile and unproductive.

On September 28, 2009, Tompkins commenced suit against the Rogowskis in Minnesota state court (Dakota County District Court, case file 19HA–CV–10–200) seeking judgment in the amount of $18,200 for unpaid rent for breach of the lease and in the amount of $8,324.40 for property damage. Default judgment was entered against the Rogowskis on January 14, 2010, in the amount of $27,092.40.23. The state court default judgment made no substantive or particular findings of fact or conclusions of law.

On March 23, 2010, the Rogowskis filed for Chapter 7 bankruptcy protection, and on June 22, 2010, Tompkins filed this adversary proceeding seeking to recover $8,324.40 pursuant to 11 U.S.C. § 523(a)(6). Tompkins claims that the property damage exceeds ordinary wear and tear, to an extent far in excess of the security deposits collected at the outset of the lease, and that the Rogowskis' conduct in causing the property damage was willful and malicious for purposes of the § 523(a)(6) exception to discharge.

## II. DISCUSSION

Section 523(a)(6) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

  (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

*See* 11 U.S.C. § 523(a)(6).

■■■■ The willful and malicious analysis is well settled:

Willful and malicious are two distinct requirements that [plaintiff] must prove by a preponderance of the evidence. *Fischer v. Scarborough (In re Scarborough)*, 171 F.3d 638, 641 (8th Cir.1999). The Supreme Court has made clear "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Kawaauhau v. Geiger*, 523 U.S. 57, 64, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *In re Patch*, 526 F.3d at 1180. "[N]ondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Geiger*, 523 U.S. at 61, 118 S.Ct. 974, 140 L.Ed.2d 90; *In re Patch*, 526 F.3d 1176, 1180 (2008). A willful injury is "a deliberate or intentional invasion of the legal rights

of another, because the word 'injury' usually connotes legal injury ... in the technical sense." *Geiger v. Kawaauhau (In re Geiger),* 113 F.3d 848, 852 (8th Cir.1997), aff'd, 523 U.S. at 57, 118 S.Ct. 974, 140 L.Ed.2d 90. Further, the debtor need not intend the consequences of his conduct to cause a willful injury. *In re Patch,* 526 F.3d at 1180. It is enough "[i]f the debtor knows that the consequences are certain, or substantially certain, to result from his conduct." *Id.* Maliciousness is conduct "targeted at the creditor ... at least in the sense that the conduct is certain or almost certain to cause ... harm." *Siemer v. Nangle (In re Nangle),* 274 F.3d 481, 484 (8th Cir.2001) (quoting *Barclays Am./Bus. Credit, Inc. v. Long (In re Long),* 774 F.2d 875, 881 (8th Cir.1985)). *See Sells v. Porter (In re Porter),* 539 F.3d 889, 893–894 (8th Cir.2008).

■ As a preliminary matter, the Court notes that the state court default judgment entered in favor of Tompkins against the Rogowskis has no bearing on the outcome of the proceeding here. "The collateral estoppel doctrine applies in bankruptcy proceedings brought under § 523(a)(6)." *Porter,* 539 F.3d at 894, citing *Hobson Mould Works, Inc. v. Madsen (In re Madsen),* 195 F.3d 988, 989 (8th Cir.1999).

■ "In the Eighth Circuit, the party asserting collateral estoppel must prove: (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judg-

ment." *Porter,* 539 F.3d at 894, citing *Robinette v. Jones,* 476 F.3d 585, 589 (8th Cir.2007).

■ "Collateral estoppel may apply in a dischargeability action brought under § 523 of the Bankruptcy Code." *See Hidy v. Bullard (In re Bullard),* 449 B.R. 379, 384 (8th Cir. BAP 2011), citing *Grogan,* 498 U.S. at 285 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "The substantive law of the forum state applies to determine the collateral estoppel effect of a state court judgment." *Bullard,* 449 B.R. at 384, citing *Scarborough,* 171 F.3d at 641; 28 U.S.C. § 1738; *State of Minn. v. Moretto (In re Moretto),* 440 B.R. 534, 538 (8th Cir. BAP 2010).

■ The Court would be "precluded by the doctrine of collateral estoppel from making a determination under § 523(a)(6) if 'willfulness' and 'maliciousness' of the Debtor's actions were determined in the state court criminal or civil actions." *Bullard,* 449 B.R. at 384. In this case, however, the default judgment against the Rogowskis did not explore, consider or determine any of the issues or elements essential to the action as it arises here under bankruptcy law. It was a judgment entered by default, not actually litigated and not supported by findings. The judgment in the Dakota County action does "not apply to bar the bankruptcy court action because the issues in the dischargeability action were not essential to the judgment" in the state court proceeding. *Id.*

■ This case, in which the defendants proceeded pro se, was fairly well pleaded and the trial was conducted with thoughtful diligence by both parties. Moreover, neither side offered incredible testimony. Tompkins expressed genuine awe and dismay at the condition of the home after the Rogowskis suddenly vacated the property

early, and she supported her experience as the injured landlord with extensive photographic evidence of alleged property damage, as well as with neighbor testimony to infer a certain diminished lifestyle attributable to the Rogowskis.

On the contrary, and likewise, the Rogowskis sincerely testified to their awe and dismay at Tompkins' reaction, or perceived overreaction, to the condition of the vacated property. The Rogowskis genuinely believed both that the property damage was minor and the result of ordinary living, and that Tompkins otherwise greatly exaggerated the extent of the wear and tear. The Rogowskis also intended to come back to the property to perform a thorough cleaning prior to officially returning possession to Tompkins, but as events unfolded they never had the opportunity. And, once Tompkins had re-entered the premises, the relationship between the parties instantly and completely deteriorated to unfriendly feelings and contentious exchanges.

This controversy is about differing standards between reasonably average people, and different expectations. The span between these standards and expectations, however, is not so far in this case and under these particular facts as to rise to the level of willful and malicious to meet the necessary elements of § 523(a)(6).

Tompkins knew that the Rogowskis kept a dog, and she collected a deposit presumably keeping in mind the damage a dog can do. Also, Tompkins' visit to the property early during the Rogowski tenancy does not support a finding of willful and malicious behavior advanced by the Rogowskis later—indeed it is more reasonable to conclude that the property was in normal condition at the time Tompkins inspected it because the Rogowskis had only inhabited the property for a few months at that point. Their occupancy continued for another nine months unchecked.

The Court appreciates Tompkins' frustration upon re-entering the property to find it very dirty, sporadically animal soiled, heavily worn, and with some of the mechanicals in need of maintenance and repair. However, the evidence does not indicate a level of conduct on the part of the Rogowskis that exceeds mere recklessness or negligence. This is a case of at most a moderately care compromised lifestyle that led to some damage, but the requisite § 523(a)(6) intent is not involved. These facts are also without a basis to find that the arguably substandard lack of care was malicious, for purposes of § 523(a)(6), or targeted to harm the creditor. The Rogowskis viewed the damage as minimal and remedial, intended to clean the property before finally leaving, and at trial did not convey to the Court a generally degenerate or irresponsible lifestyle.

The elements of § 523(a)(6) having failed to be established by a preponderance of the evidence, the Court concludes that the debt arising out of the state court default judgment, and as a result of the property damages underlying the controversy, is not excepted from discharge.

## III.  DISPOSITION

IT IS HEREBY ORDERED:

1.  The debt from Stephen and Jennifer Rogowski to Nicole Tompkins, arising out of the lease and occupancy by the Rogowskis of residential property owned by Tompkins, and underlying the judgment entered in Dakota County District Court file 19HA–CV–10–200, did not arise as a result of a willful and malicious injury for purposes of 11 U.S.C. § 523(a)(6), and is therefore dischargeable and not excepted from

discharge in the main bankruptcy case 10–31980.

LET JUDGMENT BE ENTERED ACCORDINGLY.