# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1188

_____

Mike Andrews and Jana Andrews,          *
Individually and as Next Friends        *
of Ian Andrews,                         *
                                        *
                                        *
          Appellants,                   *
                                        *
                                        *
     v.                                 *
                                        *
                                        *
The City of West Branch, Iowa;          *
Dan Knight,                             *   Appeal From the United States
                                        *   District Court for the
          Appellees.                    *   Northern District of Iowa.
----------------------------------------
Mike Andrews and Jana Andrews,          *
Individually and as Next Friends        *
of Ian Andrews; Ian Andrews,            *
                                        *
          Appellants,                   *
                                        *
                                        *
     v.                                 *
                                        *
                                        *
The City of West Branch, Iowa;          *
Dan Knight,                             *
                                        *
          Appellees.                    *

_____

Submitted:  September 21, 2005
    Filed:  July 27, 2006

_____

Before MURPHY, HEANEY, and MELLOY, Circuit Judges.
_____

HEANEY, Circuit Judge.

Appellants Mike and Jana Andrews filed this action against the City of West Branch and former Police Chief Dan Knight in district court seeking damages and other relief under 42 U.S.C. § 1983, alleging that Knight wrongfully seized and deprived them of their property; specifically, their dog, Riker. They also filed a state court action seeking relief based on Fourth and Fourteenth Amendment violations and theories of recovery under state tort law. The state court action was removed to federal court and consolidated with the § 1983 action. The appellees moved for summary judgment, and the magistrate judge granted it to them, concluding that Knight's actions were lawful under Iowa Code section 351.26, precluding any claim of a constitutional violation. The district court entered judgment in favor of appellees on all of appellants' claims. The Andrewses appeal, claiming the district court erred in its construction and application of section 351.26 of the Iowa Code, and arguing that the record reflects that a reasonable jury could conclude from the facts presented that appellants are entitled to judgment on their substantive due process, Fourth Amendment, and qualified immunity claims. We affirm in part and reverse in part, finding the Andrewses' substantive due process claim and their attachment of liability to the City of West Branch to be without merit, and their Fourth Amendment claim worthy of consideration by a jury.

I. Facts

The following material facts are not in dispute. At approximately 8:00 a.m. on February 28, 2002, West Branch City Administrator Ty Doermann received a call from a West Branch resident, who complained about a large black dog that was running loose through her neighborhood and had been bothering her dog. Doermann conveyed the complaint to West Branch Police Chief, Dan Knight. Knight responded

to the call, and drove around the neighborhood in his squad car in an attempt to catch the loose dog. Knight spotted, then lost sight of, the loose dog several times throughout his pursuit. Finally, Knight parked his car in the driveway of 417 North Maple Street, the Andrewses' home, because he had seen a large black dog in the backyard at that address. He walked toward the fenced backyard with a dog leash in his pocket and fired two shots at the dog; immediately, he realized he had shot the wrong dog. Jana Andrews, the owner of the dog, was standing on her back patio just a few feet away from her dog, Riker, when he was shot. She had just let Riker out to go to the bathroom inside the Andrewses' enclosed, fenced-in backyard. Riker had been badly wounded by Knight's first two shots, so Knight decided to shoot Riker a third time to end Riker's suffering. Riker had not been wearing his collar and tags at the time he was shot, but he was current on his distemper and rabies boosters.

Prior to shooting Riker, Knight gave no warning, and made no effort to inquire if Riker had been running loose prior to the shooting, or whether the Andrewses' backyard was completely enclosed by a fence, which it was.

## II. Analysis

Because this case comes to us on appeal from the district court's grant of summary judgment, we view the facts in the light most favorable to the Andrewses, drawing every reasonable inference in their favor. Eliserio v. United Steel Workers of Am. Local 310, 398 F.3d 1071, 1076 (8th Cir. 2005). We find the appellants' substantive due process rights claim and their claim that the City of West Branch is liable for Knight's actions to be without merit, and do not address them here.

We first consider whether Knight was authorized by statute[1] or local regulation to shoot Riker. Knight responded to a complaint about an "at large" black dog. Knight spotted a dog running loose several times, then shot Riker while he (the dog)

---

[1]Iowa Code section 351.26 states, "[i]t shall be lawful for any person, and the duty of all peace officers within their respective jurisdictions unless such jurisdiction shall have otherwise provided for the seizure and impoundment of dogs, to kill any dog for which a rabies vaccination tag is required, when the dog is not wearing a collar with rabies vaccination tag attached." Iowa Code section 351.25 states, "[a]ll dogs under six months of age, and all dogs over said age and wearing a collar with a valid rabies vaccination tag attached to the collar, shall be deemed property. Dogs not provided with a rabies vaccination tag shall not be deemed property." The Code of Ordinances for West Branch, Chapter 55.11, states in relevant part that:

1.    No animal shall be found at large within the City at any time. An animal shall not be deemed at large if:

A. It is tethered or on the enclosed premises of the owner.

The Animal Control Section of the West Branch Police Policy Manual states:

i.     The incidence of animals running at large within the City requires animal control activities and enforcement of animal control ordinances. All reported violations concerning animals are investigated, reported and followed through with to their conclusion by Officers.

ii.    Officers should utilize all available methods to obtain capture of animals running at large.

iii.   The discharging of a firearm at an animal should be considered as a last resort and then only when conditions are safe to do so.

iv.    Animals taken into custody should be taken to the animal shelter with proper documentation being completed on the animal at the shelter.

was in the Andrewses' backyard, which was completely fenced in. Under the plain meaning of the city ordinance and the police animal patrol policy, a dog in an enclosed fence is not at large, and Knight therefore did not have animal control jurisdiction over Riker at the time of the shooting. See The Code of Ordinances for West Branch, Chapter 55.11.

Appellees also assert that Knight was justified in shooting Riker because he was not wearing his rabies tag. Iowa Code section 351.26 states that it is lawful for an officer to shoot any dog without a rabies tag, unless the jurisdiction provides for the seizure and impoundment of dogs. West Branch clearly provides for the impoundment of at-large and neglected dogs, see The Code of Ordinances for West Branch, Chapter 55.05; see also The West Branch Police Animal Patrol Policy ("Officers should utilize all available methods to obtain capture of animals running at large. The discharging of a firearm at an animal should be considered as a last resort and then only when conditions are safe to do so."), and we find that the seizure and impoundment policy would logically extend to a fenced-in, passive dog that is not wearing his vaccination tags. Riker posed no greater threat to public safety than a stray dog running loose.

We believe a reasonable jury could conclude that it was premature for Knight to resort to shooting what he believed to be the at-large dog. It does not appear that Knight had exhausted all means of capturing the loose dog. The record shows that after receiving the complaint, Knight drove around the neighborhood in which the dog was at large, catching glimpses of the dog several times. It seems that the only time Knight stepped out of his vehicle in his attempt to contain the animal was to fire his weapon at a black dog in an enclosed fence. While we acknowledge that chasing a loose, disobedient dog can be maddening, Knight's decision to kill Riker does not comport with the Code's requirement that an officer use a firearm only as a last resort. Having determined that Knight was not acting in accord with the relevant Iowa statutes and city ordinances, we turn to the appellants' constitutional claims.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a constitutional right committed by a person acting under color of state law. Lesher v. Reed, 12 F.3d 148, 150 (8th Cir. 1994); Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993). The Andrewses allege that Knight's actions in shooting and killing Riker violated their Fourth Amendment right to be free from unreasonable seizures.

The Fourth Amendment guards against unreasonable searches and seizures. Graham v. Connor, 490 U.S. 386, 395 (1989). A dog is considered property for Fourth Amendment purposes. Lesher, 12 F.3d at 150-51. "A seizure of property occurs when there is some meaningful interference with a person's *possessory* interests in that property" Id. at 150. The question before us is whether this seizure was reasonable under the circumstances. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer; it does not turn on the subjective intent of the officer. Graham, 490 U.S. at 396-97. "[I]n judging the reasonableness of the officers' action, we assess only the reasonableness of their actions vis-a-vis the dogs; we do not consider potential harm to third parties." Altman v. City of High Point, N.C., 330 F.3d 194, 205 (4th Cir. 2003). When the state claims a right to make a warrantless seizure, we must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Id. at 703.

"[T]he state's interest in protecting life and property may be implicated when there is reason to believe the pet poses an imminent danger." Brown v. Muhlenberg Twp., 269 F.3d 205, 210 (3rd Cir. 2001). The State of Iowa and the City of West Branch enacted statutes and ordinances related to at-large and neglected dogs, undoubtedly to protect life and property. This does not permit an officer to "destroy a pet when it poses no immediate danger and the owner is looking on, obviously desirous of retaining custody." Id. at 211. The Andrewses assert that Knight acted unreasonably by seizing and killing Riker, who was urinating inside an enclosed area a few feet away from his owner when Knight shot him. Riker was not on the loose,

growling, acting fiercely, or harassing anyone at the time Knight killed him. Appellees respond that Knight believed Riker was a stray that had attempted to bite another dog in the neighborhood. Knight thought Riker was at-large and he was unaware that Jana Andrews was standing nearby. He assumed he had the authority to shoot Riker at the time of the seizure. Other circuits have held that an officer commits an unreasonable, warrantless seizure of property, in violation of the Constitution, when he shoots and kills an individual's family pet when that pet presented no danger and when non-lethal methods of capture would have been successful. See Brown, 269 F.3d at 210-11; Fuller v. Vines, 36 F.3d 65, 68 (9th Cir. 1994). We hold that a reasonable jury could find that Knight acted unreasonably when he seized and killed Riker.

We next consider Knight's claim of qualified immunity. Qualified immunity is applicable if Knight can show that a reasonable officer with the information he possessed at the time of the shooting could have believed that his conduct was lawful in light of the law that was clearly established on the date of the incident. Anderson v. Creighton, 483 U.S. 635, 639 (1987). A right is clearly established if a "reasonable [officer] would understand that what he is doing violates that right." Id. at 640. If the facts asserted by the Andrewses are found to be true, and if Knight had violated their Fourth Amendment right against unreasonable seizure, Knight could not have concluded "that he could lawfully destroy a pet who posed no imminent danger and whose owners were known, available, and desirous of assuming custody." Brown, 269 F.3d at 211-12. The relevant state statute and local regulations mandate that all means of capturing an at-large dog be exhausted before resorting to killing the animal. Knight testified that as he approached the enclosed fence in which Riker was standing, he held a leash in one hand and a gun on his hip. He had not attempted to communicate with anyone in the Andrews home, he had not requested back-up or the tranquilizer dart gun, and the dog was not exhibiting any aggression at the time Knight pulled into the Andrewses' driveway. Taking the facts in this light, we hold that

Officer Knight knew at the time he shot Riker that he was violating the Andrewses' clearly established right to be free from unreasonable seizures of property.

For the reasons cited above, we affirm in part, reverse in part, and remand for jury trial consistent with this opinion.

MURPHY, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's disposition of the claims for substantive due process and against the City of West Branch, but I would affirm the judgment of the district court because I think Police Chief Dan Knight is entitled to qualified immunity.

_____