# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-2815

_____

Brandee Buschmann; William Morrison,

*Plaintiffs - Appellants*,

v.

Kansas City Board of Police Commissioners, through its members Cathy Dean,
Nathan Garrett, Don Wagner, Mark Tolbert, and Mayor Quinton Lucas; John
Beck, in his individual capacity,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: April 13, 2023
Filed: August 10, 2023

_____

Before COLLOTON, WOLLMAN, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Two dog owners sued a police officer and the Kansas City Board of Police
Commissioners after the officer shot a dog during an encounter at a residence.  The

dog owners alleged that the officer violated their rights under the Fourth and Fourteenth Amendments by unreasonably "seizing" the dog. They also asserted that the Board's policies and customs caused the officer to commit the alleged violation. The district court[*] granted summary judgment for the officer and the Board, and we affirm.

I.

Officers John Beck and Jeffrey Lagud were dispatched to the residence of Brandee Buschmann and William Morrison on July 30, 2016. A neighbor had called police to report noises that led him to believe that a domestic disturbance was occurring at the Buschmann-Morrison home. At the scene, the neighbor told officers that he heard yelling, fighting, and breaking glass at the house next door.

To approach the suspect house, the officers walked through a dark, wooded area. The neighbor had informed the officers that there was a dog on the property, but expressed his opinion that the dog was not likely to attack.

Given the nature of the call and the description of the property, the officers were concerned that they could be in danger. As they approached the house, Beck drew his firearm, and Lagud took out his taser.

Lagud knocked on the door. Beck was behind Lagud, approximately five feet from the door. As soon as Lagud knocked, Beck heard a dog's paws approaching the door, along with barking and growling noises. Moments later, the door opened, and a dog ran directly toward Beck.

---

[*]The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri.

Beck fired a shot at the dog, and the dog turned left in the direction of Lagud. Beck fired a second shot that killed the dog. Buschmann was near the door at the time, but the officers did not see her until later. On further investigation, the officers determined that the noises reported by the neighbor had come from elsewhere, so they departed the residence.

The dog owners sued and alleged that Beck committed an unreasonable seizure by shooting their dog. They also claimed that the Board's policies and customs caused Beck's allegedly unconstitutional conduct.

The district court granted summary judgment for the defendants. The court ruled that Beck was entitled to qualified immunity, and dismissed the claim against the Board on the ground that no individual officer was liable. We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

II.

The Fourth Amendment, as incorporated against the States, forbids unreasonable seizures. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

Qualified immunity shields a police officer from suit unless his conduct violated a clearly established right of the plaintiff. *See Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982). A plaintiff bringing a claim under 42 U.S.C. § 1983 must show that the officer violated a constitutional right, and that the right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A right is clearly established only if any reasonable officer would understand that what he is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Existing law must have placed the constitutionality of the officer's conduct beyond debate. *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam).

The dog owners contend that Beck's actions violated their rights under the Fourth Amendment. Shooting a dog is a seizure of a person's effect, so the constitutional standard is reasonableness. *Andrews v. City of West Branch*, 454 F.3d 914, 918 (8th Cir. 2006). Even if an officer's actions are deemed unreasonable under the Fourth Amendment, he is entitled to qualified immunity if a reasonable officer could have believed, mistakenly, that the seizure was permissible—if he was "reasonably unreasonable." *Anderson*, 483 U.S. at 643.

At the time of the shooting, *Andrews* was this court's most prominent case on the reasonableness of a dog seizure. There, this court held that an officer's alleged conduct violated the Fourth Amendment when, in the course of searching for a loose dog, he approached a backyard and shot a passive dog in an enclosed area without warning. 454 F.3d at 918-19. The dog was not growling, acting fiercely, or harassing anyone. *Id.* at 918. The court reasoned that an officer may not "destroy a pet when it poses no immediate danger and the owner is looking on, obviously desirous of retaining custody." *Id.* (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211 (3d Cir. 2001)).

The situation in *Andrews* differs starkly from the circumstances confronted by Beck. Beck and Lagud responded to a report of a domestic disturbance that suggested violence. After Lagud knocked on the door, Beck heard sounds of a dog barking, growling, and running toward the door. Moments later the door opened, and

a dog ran directly toward Beck. Given the behavior of the dog, and the failure of the owner to control the animal at the doorway, a reasonable officer could have perceived the dog as an imminent threat. Beck's firing of a first shot was reasonable. *See Bailey v. Schmidt*, 239 F. App'x 306, 308-09 (8th Cir. 2007) (ruling that officers did not act unreasonably by killing dogs that either advanced on or acted aggressively toward the officers).

The dog then turned left toward Lagud. Beck was presented with a split-second decision whether to fire again in order to protect his colleague. A video recording of the incident may suggest in hindsight that the dog was bound for the doorway of the house rather than for Lagud's body, but Beck did not have the luxury of a slow-motion replay. In the brief moment that was available for Beck to react, it was reasonable for him to conclude that the dog posed a threat to Officer Lagud. At a minimum, it was a necessarily quick decision in a gray area where officers are protected by qualified immunity.

The dog owners also cite *LeMay v. Mays*, 18 F.4th 283 (8th Cir. 2021), but that decision is not persuasive support for their claims. *LeMay* came after the incident in this case, so it could not have placed Officer Beck on notice of clearly established law. Nor does *LeMay* suggest an unreasonable seizure here. That case involved an officer who allegedly shot two dogs who presented themselves in a nonthreatening manner, and this court ruled that the dog owner stated a claim at the pleading stage. 18 F.4th at 287-88. The circumstances in *LeMay* are readily distinguishable from Beck's doorway encounter with a growling dog who suddenly rushed at him and then turned in the direction of his fellow officer.

The judgment of the district court is affirmed.

_____