# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1843

_____

Janice Washington, Personal Representative of the Estate of Velma Payton; Louis Lyen Payton, deceased

*Plaintiffs - Appellees*

v.

City of St. Louis, Missouri; Philander Hughes, in his Individual and Official Capacities

*Defendants - Appellants*

Dale Glass, in his Individual and Official Capacities; Jeffrey Carson, in his Individual and Official Capacities

*Defendant*s

Ryan Martel Branson, in his Individual and Official Capacities; Matthias Arthur, in his Individual and Official Capacities

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 13, 2023
Filed: October 19, 2023

_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

In this qualified-immunity appeal, the district court misstated the burden and relied on allegations from an unverified complaint to deny summary judgment to three guards who allegedly failed to assist Louis Payton before he died. Based on these errors, we vacate and remand.

I.

Unable to afford bail, Payton spent several months at a medium-security facility in St. Louis called "the Workhouse." It had dormitory-style sleeping quarters connected to a recreation room with tables and chairs. Inmates could move freely between the two rooms, and officers kept watch from a nearby guard station.

Unfortunately, none of them saw Payton receive or take fentanyl, the drug that killed him. Inmates tried to help by rubbing ice on him once he lost consciousness, but it did not work.

Upon arriving a few minutes later, Officers Matthias Arthur, Philander Hughes, and Ryan Branson radioed for medical assistance. In the meantime, rather than try to resuscitate Payton themselves, they stood by and watched as two inmates tried to help him. When trained medical personnel finally arrived four minutes later, it was too late: they were unable to revive Payton, who died from an overdose. Surveillance footage captured some, but not all, of these events.

Payton's mother sued the City of St. Louis, the three responding officers,[1] and two supervisors for their deliberate indifference during the emergency. *See* 42

_____

[1]A fourth officer, Tannaka Boler, was once a defendant in the lawsuit but has since passed away.

U.S.C. § 1983; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). She also alleged that several of them had wrongfully caused his death. *See* Mo. Rev. Stat. § 537.080.

The defendants moved for summary judgment and a stay of discovery on the same day they filed their answer. Payton's mother, for her part, opposed both motions. Granting the stay would prevent her from getting the evidence she needed from discovery, and without learning more, she could not adequately respond to the summary-judgment motion.

The district court kept the case moving. After two rounds of summary-judgment briefing—during which Payton's aunt, Janice Washington, replaced his mother as personal representative—the court narrowed the case down to the deliberate-indifference and wrongful-death claims against the responding officers and the municipal-liability claim against the City of St. Louis. For those, it denied summary judgment.

## II.

Bypassing discovery put this case in a strange procedural posture. In denying summary judgment, the district court filled some of the holes in the record with allegations from the plaintiff's unverified complaint. Usually, in a qualified-immunity appeal, the district court has already given us the "plaintiff-friendly version of the facts" based on the evidence. *N.S. v. Kansas City Bd. of Comm'rs*, 933 F.3d 967, 969 (8th Cir. 2019). The difficulty here is figuring out what we can review when the plaintiff has no evidence.

Going back to the basics is a good place to start. An order denying summary judgment is typically nonfinal because it does not "end[] the litigation on the merits." *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 86 (2000) (citation omitted); *see also* 28 U.S.C. § 1291 (granting appellate courts jurisdiction over "final decisions of the district courts"). In fact, almost by definition, it keeps the litigation

-3-

going, which means that the party who loses must generally wait until the case is over to appeal. *See Langford v. Norris*, 614 F.3d 445, 455 (8th Cir. 2010).

Collateral orders, even when they arise out of the denial of summary judgment, are different. They are a "small class of [immediately appealable] rulings, not concluding the litigation, but conclusively resolving claims of right separable from, and collateral to, rights asserted in the action." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (citation omitted). Included among them is a decision denying qualified immunity—precisely the situation we face here. *See Johnson v. Jones*, 515 U.S. 304, 311–12 (1995).

When we review collateral orders, not everything in the case is before us. "[A]bstract issues of law," *id.* at 317, like whether the "plaintiff-friendly version of the facts" states a constitutional violation and the law clearly establishes a right, are reviewable, *N.S. ex rel. Lee v. Kansas City Bd. of Comm'rs*, 35 F.4th 1111, 1113 (8th Cir. 2022). The sufficiency of the evidence underlying the district court's findings, however, is not. *See Johnson*, 515 U.S. at 313; *see also Dean v. Bearden*, 79 F.4th 986, 988 (8th Cir. 2023). To the extent the defendants ask us to assess sufficiency, we cannot.

This case also includes two other issues, ones we do not normally see in qualified-immunity appeals. The first is whether the district court picked and applied the right summary-judgment standard. The second is whether unverified factual allegations can substitute for actual evidence in determining whether a genuine issue of material fact exists. In our view, both raise pure "legal issues" that fall within our jurisdiction, as limited as it may be. *Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014); *see Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014) (remanding the case to the district court because it "applied the wrong constitutional standard in denying qualified immunity"); *see also Vette v. K-9 United Deputy Sanders*, 989 F.3d 1154, 1163 (10th Cir. 2021) (assessing in an interlocutory appeal whether the

district court appropriately treated the plaintiff's verified complaint as "competent evidence").

## A.

The first legal error was not applying the correct summary-judgment standard. A party moving for summary judgment need not "produce evidence showing the absence of a genuine issue of material fact" when "the nonmoving party bears the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Instead, the moving party may discharge its burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*; *see also* Fed. R. Civ. P. 56(a).

The summary-judgment standard was more than just window dressing here. In its orders, the district court emphasized that the officers had not come up with any evidence definitively defeating the plaintiff's claims. In doing so, it minimized what they did produce, like the video footage, the affidavits from the officers, and the statements from the other inmates because none "*demonstrate*[*d*] the absence of a genuine issue of material fact." (Emphasis added.) The problem is that, according to *Celotex*, the officers were free to rely on the *absence* of evidence supporting the plaintiff's claims. *See Celotex*, 477 U.S. at 325.

## B.

A second error then compounded the first. The absence of discovery left the plaintiff without evidence to support her claims, so the district court looked to the unverified complaint to rebut the evidence the officers provided. As *Celotex* itself states, however, a party may not "resist a properly made [summary-judgment] motion by reference only to its pleadings." *Id.* It follows that district courts should not rely on them in denying summary judgment either.

-5-

Yet that is what happened here. One example is when the district court discussed what the guards knew. Rather than crediting their evidence that they only learned of the emergency shortly before they entered the dormitory, it pointed to the allegations in the unverified complaint that "support[ed] an inference that [they] knew of Mr. Payton's need for attention" earlier.

The same goes for how the district court dealt with the gaps in the video footage, which ranged from just a few seconds to a few minutes long. Instead of relying on other evidence to fill in the missing details, the findings mirrored what the plaintiff's unverified complaint said.[2] Once again, unsworn allegations are no substitute for evidence at summary judgment. *See Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 334 (5th Cir. 2020); *cf. Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994–95 (8th Cir. 2001) (treating allegations in a *verified* complaint as "the equivalent of an affidavit for purposes of summary judgment" (citing 28 U.S.C. § 1746)).

C.

The district court tilted the scales too far in the plaintiff's favor by raising the summary-judgment burden on the officers and allowing unsworn allegations to rebut evidence. But take note of what we do not say. On remand, the court is free to reconsider its decision to stay discovery. And we certainly express no opinion on what should happen once the court applies the right summary-judgment standard and limits itself to the evidence. Saying anything more would, after all, overstep our jurisdiction. *See Johnson*, 515 U.S. at 317; *Dean*, 79 F.4th at 988.

---

[2]The district court also did not purport to draw an adverse inference from the missing footage, nor could it have. Even beyond the fact that the video skipped multiple times, not just during key moments, there was no argument, much less any findings, that someone destroyed the evidence "to suppress the truth" or that the missing footage "would have favored [the plaintiff's] case." *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 811 (8th Cir. 2005) (citation omitted).

-6-

## III.

We accordingly vacate the denial of summary judgment and remand for further proceedings.

_____