# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-3540
_____

Allen T. Bloodworth, II

*Plaintiff - Appellant*

v.

Kansas City Board of Police Commissioners, through its members,
doing business as Kansas City Police Department; Mayor Quinton
Donald Lucas; Don Wagner; Mark Tolbert; Cathy Dean; Dawn Cramer

Scott Caron; Jeffrey O'Rear; Christopher Millsap; Lisa Allender;
Brad Lemon; Toby Sicks; Carter Truax; Jonathan Munyan;
Nathaniel Hurley; Chad Rives

*Defendants - Appellees*

Police Chief Richard Smith; James Trout; Michael Hicks; Darrin Wilson

*Defendant*s

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 20, 2023
Filed: December 22, 2023

_____

Before LOKEN, WOLLMAN, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Allen Thomas Bloodworth, II operates two towing businesses in Kansas City. One tows vehicles from privately owned properties, the other does commercial repossessions. In this action, commenced in May 2021 in Missouri state court, Bloodworth alleges that the Kansas City Board of Police Commissioners, acting through its five Members ("the Board"), and fourteen officers of the Kansas City Police Department ("KCPD") acted together to stop Bloodworth from running his businesses and shut down his ability to conduct business in Kansas City.

After Defendants removed and the district court consolidated separate cases, Bloodworth filed an Amended Complaint in October 2021, asserting seventeen state and federal claims: state law claims against all Defendants for defamation, tortious interference with contract, tortious interference with business expectancy, intentional infliction of emotional distress, and negligent hiring, training, supervision, or retention (Counts I, II, III, XV, and XVI); an additional state law claim against Sergeant Brad Lemon (Count XIV); federal claims under 42 U.S.C. § 1983 against KCPD officers for an unlawful warrant search and seizure of Bloodworth's residence and business, unlawful seizure by shooting his dog while executing the warrant, and unlawful seizure of business records during the search (Counts IV, V, and VI); claims against specific officers for failure to supervise or intervene, resulting in violations of the Fourth and Fourteenth Amendments (Counts VII, VIII, and IX); claims of § 1983 municipal liability against the Board and its Members for official policies, unlawful practice or custom, failure to train, and failure to supervise and discipline, resulting in violations of Bloodworth's constitutional rights (Counts X, XI, XII, and XIII); and a § 1983 claim for intentional acts against Bloodworth and his businesses that violated his constitutional rights (Count XVII).

In April 2022, the district court granted in part Defendants' motion for partial summary judgment on the pleadings, dismissing four officer defendants because the

Amended Complaint "fails to allege any concrete action on their part that connects to Plaintiff's various theories of liability," and granting judgment on the pleadings as to Counts IV, V, VI, VII, VIII, and IX "to the extent any of these claims purports to assert official capacity claims." Bloodworth has appealed only the final order dismissing the remaining claims. Therefore, this earlier order is law of the case not subject to appellate review. See Parkhill v. Minn. Mut. Life Ins. Co., 286 F.3d 1051, 1058 (8th Cir. 2002); Fed. R. App. P. 3(c)(1)(B).

In May 2022, the district court granted a motion for partial summary judgment dismissing the Board and its Members from Bloodworth's state law claims in Counts I, II, III, XV, and XVI as barred by sovereign immunity. Ambiguous arguments in Bloodworth's briefs appear to challenge the district court's ruling that the Board and its Members are entitled to sovereign immunity. But he did not designate this as an order from which the appeal is taken. Therefore, the order and its reasoning are law of the case not subject to our appellate review.

On August 1, 2022, the remaining Defendants other than Sergeant Lemon filed a motion for summary judgment on all remaining claims, and Lemon filed a separate summary judgment motion. After extensive briefing, the district court[1] granted both motions. Bloodworth v. Kan. City Bd. of Police Comm'rs, No. 21-00194-CV-W, 21-00488-CV-W, 2022 WL 17588490 (W.D. Mo. Nov. 15, 2022). Bloodworth appeals this final order, presenting a single issue for our review:

> Did the District Court err in granting Summary Judgment to the Defendants because there was a genuine issue of material fact with respect to each of the Plaintiff's claims against the Defendants in that the evidence adduced by the Plaintiff established that the Defendants, while acting as police officers and *ultra vires*, undertook a campaign to

---

[1]The Honorable Beth Phillips, Chief Judge of the United States District Court for the Western District of Missouri.

-3-

harass the Plaintiff, violate his civil rights and harm his business by alienating his customers?

That issue is all we need consider. See Fed. R. App. P. 28(a)(5). "We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party." Buschmann v. Kan. City Bd. of Police Comm'rs through Dean, 76 F.4th 1081, 1084 (8th Cir. 2023). When the nonmoving party bears the burden of proof, as in this case, a party moving for summary judgment "may discharge its burden by 'pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case.'" Washington v. City of St. Louis, 84 F.4th 770, 773 (8th Cir. 2023), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Concluding there was no error, we affirm.

## I. Background

KCPD has investigated Bloodworth's towing businesses since early 2016, when Officer Chad Rives, a detective with the Property Crimes Division, conducted a stolen auto investigation and a warrant search of Bloodworth's lot recovered a stolen vehicle. In late 2016 or early 2017, the KCPD Records Unit noticed that many of Bloodworth's Form 4669s -- a form towing companies are required to submit when towing a vehicle from private property -- were signed by the same person, John Speakman. Investigation revealed that Speakman initially authorized several tows but did not authorize later tows. When KCPD put stop orders on Bloodworth's drivers so they could be questioned, Speakman's name stopped appearing on Form 4669s. In October 2018, KCPD submitted 31 counts of forgery to the Jackson County Prosecutor's Office.

In March 2019, a Missouri state court judge issued a warrant to search Bloodworth's tow lot and seize "[a] red 1995 Ford Ranger pickup," a stolen vehicle; "[a]ny vehicles verified as reported stolen autos;" and "[a]ny documents regarding the

-4-

towing of verified stolen autos." Tactical teams including Officers Truax, Sicks, Munyan, and Hurley executed the warrant on March 27, accompanied by personnel from the City's Neighborhoods & Housing Services Department (referred to as "City Codes") and the Missouri State Highway Patrol. Bloodworth maintains a residence and stores towed cars on the lot.

After yelling "police" and entering the lot, the officers encountered Bloodworth and another individual outside the residence and handcuffed both. Five officers proceeded to the residence. After knocking and waiting four seconds, they forced the door open with a ram. While Officers Munyan and Miller (not a defendant) were clearing a room, covered by Officers Sicks and Truax, Bloodworth's large pitbull mix dog emerged from the kitchen and walked toward the officers, exhibiting signs of aggression. Sicks yelled "back back back." The dog paused then took a step forward; Sicks and Truax fired shots at the dog, killing it. The officers then completed clearing the residence and swept the property. Bloodworth's business records were seized, apparently by City Codes personnel, and KCPD recovered sixteen stolen vehicles, including the Ford Ranger pickup.

In June 2019, KCPD Sergeant Brad Lemon called Bloodworth and demanded the release of a towed vehicle that Lemon claimed belonged to a family member. Lemon identified himself as law enforcement and the police union president. When Bloodworth refused to release the car without authorization from its registered owner, Lemon referenced the investigation of Bloodworth's businesses and said, "it's game on" and "we'll start the same routine with you then." The recorded call was publicized in local media. In September 2019, the Jackson County Prosecutor charged Bloodworth with 31 counts of forgery. In December 2020, the prosecutor dismissed the charges due to Lemon's phone call.

## II. The State Law Claims

The district court's May 2022 order held that Bloodworth's state law claims in Counts I, II, III, XV, and XVI against the Board and its Members are barred by sovereign immunity. In the final order being appealed, the court addressed the individual state law claims against Sergeant Lemon and the other KCPD officer defendants. The court dismissed these claims against the other officers as barred by state law official immunity and alternatively on the merits. It dismissed the state law claims against Sergeant Lemon on the merits.

**A. The Non-Lemon Officer Defendants.** "[P]ublic officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions." State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 444 (Mo. banc 1986) (quotation omitted). However, this "official immunity does not aply to discretionary acts done in bad faith or with malice." Davis v. White, 794 F.3d 1008, 1013 (8th Cir. 2015) (quotation omitted). In opposing summary judgment, Bloodworth argued these Defendants "are not entitled to official immunity because they were acting *ultra vires*, or beyond their lawful authority," and their actions "were conducted with malice or in bad faith." The district court disagreed:

> According to the Amended Complaint, all Defendants, at all relevant times, were acting under color of law and on behalf, or under the authority, of the Board. Further, most conduct involves standard police activities. For example . . . investigations of potential criminal activity, such as a failure to follow proper procedures when towing vehicles, misuse of someone's signature, and the whereabouts of vehicles that were reported stolen. They also spoke to potential witnesses and executed a search warrant . . . typical law enforcement activities. . . .
>
> Plaintiff's contention that the KCPD investigated his business based on improper motives . . . is unavailing. Again, the KCPD was investigating purported criminal conduct. Plaintiff denies wrongdoing, but some

-6-

evidence of questionable activity exists. . . . If plaintiff was engaging in illicit conduct, attempting to prevent such activity was a reasonable response. The Officers had a legitimate belief there were issues with the local towing industry and firmly believed Plaintiff was failing to follow the law. . . . The Officers were acting within the scope of their law enforcement duties, and they were not acting with malice or in bad faith.

Bloodworth, 2022 WL 17588490, at *5. Regarding Bloodworth's claims in Counts II and III that defendants tortiously interfered with his contract and business expectancies, the court explained:

Plaintiff . . . provides no evidence of any specific statement of any named defendant to Plaintiff's customers. . . . If Plaintiff is relying on the investigation into his business to support this claim, the Court has found that the Officers engaged in a legitimate investigation into potential illegal activity. Such conduct cannot comprise the basis of a tortious interference claim. Further, Plaintiff has failed to demonstrate damages attributable to the Officers' conduct.

Bloodworth, 2022 WL 17588490, at *6.

On appeal, Bloodworth argues the district court erred in granting these Defendants official immunity on all state law claims because they "were acting outside the scope of their employment as Police Officers" as defined in § 84.420(1) of the Revised Statutes of Missouri. "There is no conceivable law enforcement purpose for" Defendants' intentional attempts to "harass[] and persecute[] Mr. Bloodworth," try to shut down his business, and "harass[] and intimidate[] Bloodworth's customers so that his business would be harmed." He asserts that "Defendants' actions were not related to any laws or the enforcement of any laws or the investigation of any crime." As the above-quoted portion of the district court's opinion makes clear, the record belies these contentions. The investigation was based on the improper filing of forms required by law and reports of stolen cars, some of

-7-

which were recovered from Bloodworth's property. This resulted in the filing of criminal charges that were ultimately dismissed voluntarily by the prosecutor as a result of Defendant Lemon's improper call. These actions were clearly within the scope of Defendants' responsibilities as police officers. For the reasons stated by the district court, these Defendants were entitled to official immunity and the grant of summary judgment dismissing Bloodworth's state law claims against these defendants is affirmed. Cf. Wealot v. Brooks, 865 F.3d 1119, 1129 (8th Cir. 2017).[2]

**B. Sergeant Lemon:** In his motion for summary judgment, Sergeant Lemon did not argue that Bloodworth's state law claims are barred by official immunity. The district court granted summary judgment dismissing these claims on the merits.

**1. Defamation (Count I).** Bloodworth claims that Sergeant Lemon made false, defamatory statements in his June 2019 phone call to Bloodworth seeking release of a towed vehicle. To prevail on this claim, Bloodworth must prove "1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation." Smith v. Humane Soc'y of the U.S., 519 S.W.3d 789, 798 (Mo. banc 2017) (quotation omitted). The district court granted summary judgment dismissing this claim because, while the allegedly defamatory statements were aired on local news, they were not published by Lemon. Bloodworth, 2022 WL 17588490, at \*10.

---

[2]Bloodworth also argues that Defendants violated his federal constitutional rights by telling his customers not to do business with him. The argument is based on the same facts as his tortious interference state law claims and fails for the same reasons. He has not established any deprivation of the alleged property interest.

On appeal, Bloodworth argues the district court erred because, viewed in the light most favorable to the plaintiff, the evidence established that there is a genuine issue of material fact. We disagree. "Communication of defamatory matter only to the plaintiff who then discloses to third parties ordinarily does not subject defendant to liability," unless the defendant "intends, or has reason to suppose, that in the ordinary course of events the matter will come to the knowledge of some third person." Overcast v. Billings Mut. Ins. Co., 11 S.W.3d 62, 70 (Mo. banc 2000) (quotation omitted). Bloodworth cites no evidence in the summary judgment record tending to show that Lemon either published the statements himself, or "intend[ed], or ha[d] reason to suppose" they would be communicated to any third party. There was no error.

**2. Tortious Interference with Contract and Business Expectancy (Counts II and III).** Bloodworth claims that statements in Sergeant Lemon's June 2019 phone call -- "it's on then" and "we'll start the same routine with you then" -- tortiously interfered with Bloodworth's contract and business expectancies because they demonstrate Lemon was responsible for the forgery charges filed three months later. The district court concluded Bloodworth had not stated a viable claim because "he provides no evidence that Lemon played a role in the initiation of the forgery charges [and] has not identified any specific contracts or business expectancies that were harmed." Bloodworth, 2022 WL 17588490, at *10.

On appeal, Bloodworth argues the district court erred because a jury could infer tortious interference from the fact that "31 baseless counts of forgery" were filed three months later. But he points to no specific evidence establishing the elements of these claims *against this defendant* -- "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." Bishop & Assoc., LLC v. Ameren Corp., 520 S.W.3d 463, 472 (Mo. banc 2017) (quotation omitted). There was no error.

**3. Assault (Count XIV).** Bloodworth claims that Lemon committed assault when he threatened Bloodworth during the phone call by saying that "the same routine" (an investigation), "it's on." "Assault is any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril." Devitre v. Orthopedic Ctr. of St. Louis, LLC, 349 S.W.3d 327, 335 (Mo. banc 2011) (quotation omitted). The district court granted summary judgment on this claim because "assault requires a connection to bodily harm or offensive contact. Plaintiff's allegations cannot support an assault claim." Bloodworth, 2022 WL 17588490, at *11.

On appeal, Bloodworth argues the district court erred because assault includes an "offer or attempt to injure" and "the call demonstrates that Lemon offered to injure Bloodworth." We disagree. "To plead an assault, [Bloodworth] must allege: (1) defendant's intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent, and (3) apprehension of bodily harm or offensive contact." Devitre, 349 S.W.3d at 335. Lemon's statements, made in a phone call, did not evidence intent to cause bodily harm or offensive contact, and Bloodworth points to no evidence in the summary judgment record supporting a claim that they "creat[ed] a fear of imminent peril." There was no error.

**4. Intentional Infliction of Emotional Distress (Count XV).** Bloodworth claims that Sergeant Lemon intentionally inflicted emotional distress ("IIED") when he identified his law enforcement position in the phone call, asked Bloodworth to engage in illegal activity by releasing a vehicle without the owner's authorization, and then threatened further police action and investigation when Bloodworth refused. The district court granted summary judgment because Lemon's actions, while "ill-advised and questionable . . . were not 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Bloodworth, 2022 WL 17588490, at *11, quoting Gibson v. Brewer, 952 S.W.2d 239, 249 (Mo. banc 1997).

On appeal, Bloodworth argues the district court erred because a reasonable jury could conclude that Lemon's conduct was extreme and outrageous. Like the district court, we disagree. "Missouri case law reveals very few factual scenarios sufficient to support a claim for IIED." Bailey v. Bayer CropScience L.P., 563 F.3d 302, 310 (8th Cir. 2009) (citations omitted), a case in which we affirmed the grant of summary judgment dismissing an IIED claim. "[T]he plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm." K.G. v. R.T.R., 918 S.W.2d 795, 799 (Mo. banc 1996) (citations omitted). The claim "will not lie where the alleged conduct is intended to invade other legally protected interests." Id. This "relative newcomer to the common law . . . was intended to supplement existing forms of recovery, not swallow them." Id. Bloodworth points to no specific evidence in the summary judgment record that meets these rigorous criteria. There was no error.

### III. The Federal Law Claims

The district court divided Bloodworth's federal law claims into three categories, those relating to conduct of individual KCPD officers, claims of failure to intervene or supervise, and municipal liability claims. The court granted summary judgment dismissing these claims, agreeing with Defendants that "there is an absence of evidence to support the nonmoving party's case." Washington, 84 F.4th at 773 (quotation omitted).

**A. Individual Officer Conduct Claims (Counts IV, V, VI, and XVII).** These § 1983 claims allege Fourth Amendment violations against specific KCPD officer defendants arising out of the warrant search on March 27, 2019 (Count IV), the seizure (killing) of Bloodworth's dog (Count V), the seizure of his business records (Count VI), and "intentional acts against Plaintiff and his businesses" (Count XVII). In granting officers other than Lemon summary judgment dismissing these Fourth Amendment claims, the district court held they were entitled to qualified immunity.

-11-

Qualified immunity insulates government officials from liability "unless (1) the evidence, viewed in the light most favorable to [Bloodworth], establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable official would have known that his actions were unlawful." Ackerman v. State of Iowa, 19 F.4th 1045, 1058 (8th Cir. 2021) (quotation omitted). A federal court may exercise discretion in determining which prong of the qualified immunity analysis to address first. Ryno v. City of Waynesville, 58 F.4th 995, 1005 (8th Cir. 2023).

The district court noted that the claims regarding interfering with Bloodworth's business, Defendants' conduct during the search, and the seizure of business records are "general assertions, largely without referencing any individual defendant's specific conduct. . . . Thus, a constitutional violation has not been established." Bloodworth, 2022 WL 17588490, at *8. This was clearly correct. We have repeatedly emphasized that "[t]he doctrine of qualified immunity requires an *individualized* analysis of *each* officer's alleged conduct." S.M. v. Krigbaum, 808 F.3d 335, 340 (8th Cir. 2015) (emphasis in original; quotation omitted); see Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (a government official is "only liable for his or her own misconduct."). In their scatter-gun briefs, counsel for Bloodworth repeatedly assert that Bloodworth presented sufficient evidence that "Defendants" violated his rights to avoid summary judgment. This will not do. There are 17 separate claims and 14 individual defendants. "Judges are not like pigs, hunting for truffles buried in briefs." Brown v. City of Jacksonville, 711 F.3d 883, 888 n.5 (8th Cir. 2013), quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991). We summarily affirm every § 1983 claim against a defendant whose conduct was not specifically linked to that particular alleged violation.

On appeal, Bloodworth argues the summary judgment record supports two violations of his clearly established Fourth Amendment rights: (1) the "years-long campaign against" Bloodworth and his businesses, which "depriv[ed] him of his

property interest in his business," and (2) Defendants' use of excessive force and their unreasonable search and seizure of his property.

**1. Alleged Campaign Against Bloodworth's Businesses.** In addition to rejecting this claim because Bloodworth did not reference any Defendant's specific conduct, the district court concluded that Bloodworth's general assertions are unconvincing. "[T]he KCPD investigated Plaintiff regarding alleged criminal activity; it was not simply trying to shut down Plaintiff's business due to improper motivations." Bloodworth, 2022 WL 17588490, at *8. We agree. On appeal, Bloodworth points to a statement by an individual Defendant referring to his "problem business" and to deposition testimony referring to "the propensity for the continuous criminal enterprise part of [the business]." But such statements confirm that alleged criminal activity brought to KCPD's attention, not personal animus, motivated the investigation. A licensed business that does not conform to its licensing obligations and refuses demands that it come into compliance at some point faces license revocation (being shut down).

**2. Excessive Force and Unreasonable Search and Seizure of Property.** Bloodworth argues that Defendants violated his Fourth Amendment rights on March 27, 2019, by: (a) failing to knock and announce before breaking into his residence, (b) handcuffing Plaintiff, (c) shooting and killing his dog, and (d) taking business records.[3] To the extent that Bloodworth identified specific conduct of individual defendants, the district court found these arguments unpersuasive.

(a) The Fourth Amendment usually requires police officers to knock and announce their presence before executing a warrant to search a dwelling. See Wilson v. Arkansas, 514 U.S. 927, 936 (1995). Here, the KCPD tactical teams yelled

---

[3]The warrant explicitly authorized search for and seizure of "[a]ny documents regarding the towing of verified stolen vehicles."

"police" before entering the tow lot property, detained Bloodworth and his employee outside the residence, reached the door of the residence some 30 seconds after entering the property, knocked and announced, and broke into the residence only four seconds later. Bloodworth argues this violated the Fourth Amendment because Defendants Sicks and Truax testified that KCPD policy requires officers to wait 15 seconds before forcefully entering a home. The district court disagreed, noting the Fourth Amendment reasonableness inquiry is flexible and Bloodworth "offers no explanation as to why the knock and announce was unreasonable here." Bloodworth, 2022 WL 17588490, at *8. Bloodworth's briefs on appeal do not provide the needed explanation. Moreover, it is well-established "that police department guidelines and policies do not create rights that give rise to a § 1983 action." Christiansen v. Eral, 52 F.4th 377, 379 (8th Cir. 2022) (citation omitted).

(b) Bloodworth argues that Defendants subjected him to an unreasonable search and seizure that violated his Fourth Amendment rights when they handcuffed him in the tow lot and broke into a residence that was not described in the warrant. These contentions are without merit. As the district court explained, "officers are allowed to detain individuals present on a property being searched," citing Muehler v. Mena, 544 U.S. 93, 98 (2005). Bloodworth, 2022 WL 17588490, at *8. The warrant "referenced the entire property" and authorized a search for and seizure of "[a]ny documents regarding the towing of verified stolen vehicles."

(c) In Count V, Bloodworth alleges that Defendants Sicks and Truax violated the Fourth Amendment when they shot and killed Bloodworth's dog Rocky while executing a warrant search of his residence. The district court recognized that "[a] dog is considered property for Fourth Amendment purposes," and killing a family pet is a seizure. Andrews v. City of W. Branch, 454 F.3d 914, 918 (8th Cir. 2006). "[A] police officer may justify shooting a dog in order to protect life and property only when it presents an objectively legitimate and imminent threat to him or others." LeMay v. Mays, 18 F.4th 283, 287 (8th Cir. 2021). The district court noted that

-14-

"Sicks and Truax were tasked with covering Munyan and Miller, who were focused on clearing a room." Bloodworth, 2022 WL 17588490, at *9. The dog "exhibited some signs of aggression," moved toward the officers, and paused, "then began to move forward and was immediately shot." Id. The court concluded that "Plaintiff has not demonstrated Sicks and Truax violated his Fourth Amendment rights by engaging in an unreasonable seizure through killing Rocky." Id. The court found the cases on which Bloodworth relied to support this claim "readily distinguishable." Id.

We agree that dogs are considered "effects" within the meaning of the Fourth Amendment, and therefore shooting a dog is a seizure that must be objectively reasonable or it violates the owner's Fourth Amendment property interest. Hansen v. Black, 872 F.3d 554, 558 (8th Cir. 2017), cert. denied 138 S. Ct. 2010 (2018). This inquiry "turns on the facts and circumstances of each particular case," viewed from "the perspective of a reasonable officer on the scene." Id. at 558 (quotation omitted). We also agree that the cases on which Bloodworth relies, primarily Andrews and LeMay, are distinguishable.

In Andrews, a police officer looking for a loose dog running in the neighborhood shot another dog that was inside a fenced yard showing no signs of aggression, with his owner just a few feet away. 454 F.3d at 916. Our divided panel reversed the grant of summary judgment for the officer. Id. at 918-19. In LeMay, an officer responding to a home security alarm jumped over a fence, walked into the back yard, and shot two service dogs that approached the officer, one "in a friendly manner," the other "in a non-threatening manner." 18 F.4th at 286. We affirmed the district court's denial of defendant's motion to dismiss. Id. at 288.

By contrast, in Buschmann v. Kansas City Board of Police Commissioners, officers responding to a domestic violence call walked through a dark wooded area and drew their weapons as they approached plaintiffs' house. 76 F.4th 1081, 1083-84 (8th Cir. 2023). When they knocked on the door, they heard barking and growling.

-15-

When the door opened, a dog ran directly at one officer, who shot it, then shot it again when it turned toward the other officer. Id. Noting the officer faced a "split-second decision," and distinguishing Andrews and LeMay, we affirmed the grant of qualified immunity because it was reasonable to believe that an uncontrolled dog barking and growling and advancing toward the officers was "an imminent threat." Id. at 1085; accord Bailey v. Schmidt, 239 F. App'x 306, 308 (8th Cir. 2007) ("defendants did not act unreasonably . . . given the uncontested evidence that all of the dogs either advanced or acted aggressively toward the officers.").

Here, Officers Sicks and Truax encountered Bloodworth's large pitbull mix dog after they lawfully entered the residence not knowing who might be present. Officers Munyan and Miller were clearing a room while Sicks and Truax covered them. The dog's owner was not present to control the animal. The uncontrolled dog came out of another room and approached the officers, barking and not showing signs of friendliness. The dog was within six feet of Munyan and Miller when Sicks yelled "back." When the dog instead moved forward, both Sicks and Truax fired their weapons. Defendant Truax testified that he believed the dog was a danger to his colleagues and that it was "blocking our avenue to get safely to the other side of the house to clear the rest of the residence."

In these circumstances, a reasonable officer could conclude that the dog posed an imminent danger to Officers Munyan and Miller. The size and breed of an uncontrolled dog that advances aggressively on officers performing police duties are clearly relevant to the objective reasonableness of their split-second decision to forcefully seize the animal. See Kendall v. Olsen, 727 F. App'x 970, 974-75 (10th Cir. 2018); Lee v. Town of Fort Mill, 725 F. App'x 214, 218-19 (4th Cir. 2018); Altman v. City of High Point, 330 F.3d 194, 206-07 (4th Cir. 2003).

(d) Bloodworth claims that the tow lot search violated his Fourth Amendment property rights when business records outside the scope of the warrant were seized.

-16-

Defendants denied having possession of the seized documents. Major Caron testified that City Codes employees accompanying the KCPD officers examined and took business documents from the residence. The district court rejected this claim "[b]ecause Plaintiff has not linked the potential constitutional violation to the named defendants." As explained, we uphold that ruling. Bloodworth argues that City Codes personnel "had no authority to be there" and letting them take records not reflected on the inventory of seized items "was a violation of his clearly established property interest in those records." We agree with the district court that "none of this conduct is directly attributed to the Officers." Defendants cannot be liable under § 1983 for seizures by other personnel.

**3. Alleged Intentional Acts Fourth Amendment Violations (Count XVII).** Bloodworth alleged in Count XVII that Defendants violated the Fourth Amendment by maliciously acting together, without justification, to render him unable to conduct his businesses. The Non-Lemon Officer Defendants did not reference this claim in their motion to dismiss. The district court concluded it "essentially repackages other theories and largely relies on the same purported misconduct" and dismissed it because it fails for the same reasons. Bloodworth, 2022 WL 17588490, at *10 n.12. On appeal, without citation to any authority, Bloodworth argues "[t]his was surely an abuse of discretion." We disagree. There was no error.[4]

Sergeant Lemon did expressly include Count XVII in his motion to dismiss, arguing Bloodworth adduced no evidence that he took any action in an official capacity or engaged in unconstitutional conduct. The district court agreed there is no evidence "Lemon was involved in the investigation and charging of Plaintiff" with

---

[4]Bloodworth does not challenge the district court's dismissal of Count XVII on the merits, so any objection is waived. See XO Missouri, Inc. v. City of Maryland Heights, 362 F.3d 1023, 1025 (8th Cir. 2004); Mahler v. First Dakota Title Ltd. P'ship, 931 F.3d 799, 807 (8th Cir. 2019).

the forgery charges that were ultimately dismissed. Bloodworth, 2022 WL 17588490, at *11. On appeal, Bloodworth argues that, based on Lemon's threat of an investigation in the phone call and the fact charges were later filed, "a jury could infer that Mr. Lemon . . . was involved in the persecution of Mr. Bloodworth." We agree with the district court that the investigation and filing of forgery charges against Bloodworth did not violate his Fourth Amendment rights. Bloodworth fails to respond to the district court's conclusion that Lemon's inappropriate phone call, without more, is insufficient to establish that Lemon was involved in the investigation and charging. There was no error.

**B. Failure to Intervene or Supervise Claims (Counts VII, VIII, and IX).** Bloodworth argues the district court erred in dismissing his failure to intervene and failure to supervise claims against Defendants Sicks, Caron, and Millsap.[5] To prevail on a claim of failure to intervene and failure to supervise, Bloodworth must prove an underlying constitutional violation. See Zubrod v. Hoch, 907 F.3d 568, 580 (8th Cir. 2018) (failure to intervene); Malone v. Hinman, 847 F.3d 949, 955-56 (8th Cir.) (failure to supervise), cert. denied 583 U.S. 870 (2017). Because we have upheld the district court's grant of summary judgment dismissing Bloodworth's claims of constitutional violations by KCPD officers, there can be no § 1983 supervisor liability. See Sanders v. City of Minneapolis, 474 F.3d 523, 527 (8th Cir. 2007).

**C. Monell Claims (Counts X, XI, XII, and XIV).** Municipalities may be held liable under § 1983 when a constitutional violation results from an official custom or policy of the municipality. Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658 (1978). Bloodworth asserted four Monell claims against the Board and its Members, arguing that the Board's (1) official policy; (2) unlawful practice or

---

[5]"We have held there is no clearly established law regarding a duty to intervene outside of the excessive force context." Andrews v. Schafer, 888 F.3d 981, 984 n.4 (8th Cir. 2018) (citation omitted).

custom; (3) failure to properly train officers; and (4) failure to properly retain, supervise or discipline officers led to constitutional violations. The district court granted summary judgment dismissing these claims because "Plaintiff has either failed to (1) develop his claims, (2) establish individual liability because conduct was constitutional, or (3) demonstrate the Board has authority over the entities, such as City Codes, allegedly engaging in unconstitutional conduct." Bloodworth, 2022 WL 17588490, at *10. We agree.

On appeal, Bloodworth first argues the district court erred because Defendants did not move for summary judgment on these claims. Our review of the record persuades us that Defendants did move for summary judgment on these Counts. It appears that Bloodworth misinterprets footnote 12 in the district court order as applying to these Counts, rather than to Count XVII. But the record is confusing.

On the merits, these claims clearly fail because, as we have explained, Bloodworth failed to establish a constitutional violation resulting from official policy, unlawful practice or custom, or failure to properly train, retain, supervise, or discipline KCPD officers. "Because there is no cognizable constitutional violation, there is no basis for Monell liability." Brabit as Tr. for Bild v. Capra, 59 F.4th 349, 354 (8th Cir. 2023).

For the foregoing reasons, the judgment of the district court is affirmed.

_____

-19-